# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

United States of America,

v.

Leena F. Awad (1),

Defendant.

_____/

Case No. 1:18-cr-00318

Michael L. Brown
United States District Judge

## ORDER

Defendant Leena F. Awad is currently in federal custody pending sentencing. She seeks "an unsecured bail bond with the condition of home confinement and supervised release." (Dkt. 143 at 6.) The Court previously ordered that Defendant be detained, so her request is framed as a motion for reconsideration. The Court denies Defendant's motion.

**I.  Background**

In August 2018, a federal grand jury in the Northern District of Georgia indicted Defendant (a Jordanian citizen) on one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; nine counts of wire fraud, in violation of 18 U.S.C. § 3143; and one count of false swearing in an immigration matter, in violation of 18 U.S.C.

§ 1546(a). (Dkt. 1.) After holding an evidentiary hearing, the Court ordered that Defendant be detained pending trial because "no condition or combination of conditions will reasonably assure [her] appearance." (Dkts. 28; 31 at 9.) In March 2019, the Court denied Defendant's motion for reconsideration. (Dkt. 82.)

In October 2019, Defendant pleaded guilty to the wire fraud conspiracy count. (Dkt. 108.) The Court accepted that plea. (*Id.*) Defendant remains in federal custody pending her sentencing. (*Id.*) In May 2020, she filed another motion for reconsideration of the Court's detention order. (Dkt. 143.) She claims she is no longer a flight risk because her Jordanian passport has expired, Jordan has closed all flights due to the COVID-19 epidemic, her expected sentence is shorter than previously thought, and there is no guarantee that she will be deported after serving her sentence. She also says the COVID-19 epidemic constitutes exceptional circumstances justifying her release. The government opposes Defendant's motion. (Dkt. 144.)

## II. Legal Standard

"Whether a person should be released pending sentencing is governed by 18 U.S.C. § 3143." *United States v. Sanyaolu*, 2017 WL

3668615, at *2 (N.D. Ga. Aug. 25, 2017). Subject to inapplicable exceptions, that provision states:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released [on personal recognizance, an unsecured appearance bond, or conditions].

18 U.S.C. § 3143(a)(1). In other words, "[t]he presumption is in favor of detention pending sentencing." *Sanyaolu*, 2017 WL 3668615, at *2. "To rebut this detention presumption, a defendant must show by clear and convincing evidence that detention is not warranted, because the defendant is neither a flight risk nor a danger to the community." *Id*.

### III. Discussion

#### A. Flight Risk

The Court previously found that Defendant is a flight risk because (1) "[s]he faces significant charges that could result in significant jail time"; (2) "the government presented substantial evidence of her involvement in wire fraud over a four-year period"; (3) "[i]f convicted . . . she will almost certainly be deported at the end of her imprisonment"; (4) she "has significant ties to Jordan" and "is a citizen of that country";

3

and (5) "[s]he has no property tying her to the United States." (Dkt. 31 at 9–10.) Essentially all of this remains true. Defendant says her expected sentence, and the likelihood of her deportation, are lower than previously thought. But they are still significant. The maximum sentence for wire fraud conspiracy, to which she has now pleaded guilty, is still 20 years. *See* 18 U.S.C. §§ 1343, 1349. The government estimates a sentence of at least 41–51 months, which is only marginally lower than the five-year minimum previously anticipated by the Court. (*See* Dkts. 31 at 5; 144 at 5.) And the Court may, of course, impose a longer term of imprisonment. The potential for a multi-year sentence is significant and provides an incentive to flee. *See United States v. Epstein*, 155 F. Supp. 2d 323, 326 (E.D. Pa. 2001) ("This sentencing range [of 37–46 months] is a sufficiently unpleasant prospect to persuade defendant under the present circumstances to exit the United States if he had the opportunity."); *United States v. Allen*, 891 F. Supp. 594, 598 (S.D. Fla. 1995) ("The lengthy sentence presumptively provides Allen with a strong incentive to flee."). That is true even if Defendant receives sentencing credit for her pre-trial detention.

The likelihood that Defendant will be deported after serving her sentence also remains high. Her wire fraud conspiracy conviction constitutes an aggravated felony, which generally precludes naturalization and renders her "deportable" under U.S. immigration law. *See* 8 U.S.C. §§ 1101(a)(43)(M)(i), (U) (defining "aggravated felony" as an offense, or conspiracy to commit an offense, that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"); *Moncrieffe v. Holder*, 569 U.S. 184, 187 (2013) ("[I]f a noncitizen has been convicted of one of a narrower set of crimes classified as 'aggravated felonies,' then he is not only deportable but also ineligible for [certain] discretionary forms of relief."); *see also* 8 U.S.C. 1101(f)(8), 1227(a)(2)(A)(iii), 1228, 1427(a) (describing immigration consequences of aggravated felony conviction for noncitizens). Indeed, Defendant acknowledged in her plea agreement that "because the Defendant is pleading guilty to [wire fraud conspiracy], removal is presumptively mandatory." (Dkt. 108-1 at 4.) She essentially acknowledges the same thing in her current motion. (*See* Dkt. 145 at 4 ("Ms. Awad is . . . subject to and will likely be placed in removal proceedings before the immigration Court.").) Defendant's likely "removal from the United States as a consequence of [her] conviction adds

5

to Defendant's risk of flight and undermines Defendant's arguments for release." *Sanyaolu*, 2017 WL 3668615, at *2.

Defendant claims she can no longer travel to Jordan because her passport has expired and Jordan has closed all flights due to the COVID-19 epidemic. The fact that Defendant's passport has expired is no stronger an argument for release than her prior offer to surrender her passport — an offer the Court rejected when it initially issued its detention order. The Court is also unmoved by Jordan's temporary airport closure. How much longer that closure will last is unclear. And it does not stop Defendant from pursuing other methods of entering Jordan. Nor does it stop her from fleeing to another country either indefinitely or until Jordan reopens its airports.

The most significant development since the Court's prior detention order actually increases, not decreases, Defendant's flight risk: she now stands convicted of wire fraud conspiracy. This has two big consequences. First, it "removes the possibility that the defendant might avoid criminal punishment—subject to appeal—which increases h[er] incentive to flee." *United States v. Patel*, 2016 WL 80566, at *2 (E.D. La. Jan. 7, 2016); *see United States v. Jensen*, 2012 WL 13106375, at *9

6

(N.D. Ga. Oct. 22, 2012) ("The fact of her conviction is real, the significant period of incarceration she must serve is self-evident, and the restitution she is required to pay is substantial. Jensen has a greater incentive to flee now than existed before her conviction."); *United States v. Garcia Garcia*, 727 F. Supp. 318, 320 (N.D. Tex. 1989) ("The criminal punishment he faces is now a certainty, subject to success on appeal. The hope for leniency or victory at trial no longer exists to counterbalance the incentive to avoid criminal punishment by fleeing the jurisdiction."). Second, it means she now bears the burden to prove by clear and convincing evidence that she is *not* flight risk — a burden she did not face when the Court initially ordered her detention. Given the force of these consequences, and the weakness of Defendant's arguments for release, the Court declines to reconsider its detention order. Defendant has not shown "by clear and convincing evidence that [she] is not likely to flee . . . if released." 18 U.S.C. § 3143(a).

### B.   COVID-19

Defendant next claims that the COVID-19 epidemic constitutes an "exceptional" circumstance justifying her release under 18 U.S.C. § 3145(c). (*See* Dkt. 143 at 3–5.) Section 3145(c) does allow certain

7

detained persons to be released "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." 18 U.S.C. § 3145(c). But that provision applies only to "person[s] subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meet[] the conditions of release set forth in section 3143(a)(1) or (b)(1)." *Id.* Defendant is not subject to detention under Section 3143(a)(2) or (b)(2). Nor does she meet the conditions of release in Section 3143(a)(1) or (b)(1), which both require a finding by clear and convincing evidence that the defendant is not likely to flee. So, as the government points out, Section 3145(c)'s "exceptional circumstances" test simply does not apply to Defendant here. (*See* Dkt. 144 at 6); *see, e.g.*, *United States v. Ferry*, 2020 WL 2198118, at *3 (D.N.M. May 6, 2020) ("[T]he Court need not reach the issue of whether or not the COVID-19 pandemic qualifies as an 'exceptional reason' under 18 U.S.C. § 3145(c) because even if the pandemic were an 'exceptional reason,' Ms. Ferry has not shown by clear and convincing evidence that she is neither a flight risk nor a danger to the community.").

Even assuming Defendant is somehow entitled to be released if she establishes "exceptional" circumstances, she has not done so here. She

8

claims she "has suffered from high blood pressure and asthma," which increase her risk of severe illness if she contracts COVID-19. (Dkt. 143 at 4.) That may be. But she has not shown that the likelihood of contracting COVID-19 in her federal detention facility is so severe that it constitutes an exceptional circumstance justifying her release. Indeed, there is no evidence of *any* infection among the inmate population at her facility. (*See* Dkt. 144 at 9.)[1] And, as the government explains in its brief, the facility has implemented robust policies to combat the spread of COVID-19 and to protect the health of inmates and staff. (*See id.* at 8–9); *see, e.g.*, *United States v. Pritchett*, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (COVID-19 did not warrant release of defendant with asthma because the detention facility was taking "necessary steps and precautions to help stop the spread of COVID-19" and "the COVID-19 virus has not been detected at the [facility]").

Defendant also complains that the facility has imposed limitations on in-person visits as a result of the COVID-19 epidemic, and that this

---

[1] The Court previously granted compassionate release to an inmate at the same facility based, in part, on evidence of the facility's failure to follow its own safety protocols in regard to that inmate. Defendant has made no such showing here. And, that inmate's situation was also drastically different than Defendant's situation.


"has impaired the Defendant's ability to adequately assist counsel in the preparation of her sentencing." (Dkt. 143 at 5.) But the government states, and Defendant does not dispute, that the facility allows attorney-client interactions by telephone and video. (Dkt. 144 at 9–10.) The facility has five video units set up in private rooms for these interactions. And inmates can contact their attorneys directly (by mail or telephone) to request a virtual meeting — a request which, according to the government, the facility "will accommodate." (*Id.*) So, Defendant can still work with her attorney in preparation for her sentencing. She just has to do it remotely rather than in person. That arrangement may not be ideal but it makes sense given the risks posed by COVID-19. It certainly does not constitute exceptional circumstances justifying her release. Defendant's motion for reconsideration is denied.

## IV. Conclusion

The Court **DENIES** Defendant Leena F. Awad's Motion for Reconsideration and Release on Bail from District Court's Order of Detention (Dkt. 143).

**SO ORDERED** this 22nd day of June, 2020.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

11